UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY MORGAN and
DARLA MORGAN,

       Plaintiffs,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC. and EQUIFAX
INFORMATION SERVICES, LLC,
_____/

Case No. 2:23-cv-11783

Honorable

Tarek N. Chami (P76407)
**CHAMI LAW, PLLC**
22000 Michigan Ave., STE 200
Dearborn, MI 48124
T: (313) 444-5029
tarek@chamilawpllc.com

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Terry Morgan and Darla Morgan (collectively, "Plaintiffs"), through counsel, allege violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* against Defendants Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax") (referenced collectively as "Defendants").

## I.    INTRODUCTION

1.    Plaintiffs' Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* by Defendants. Plaintiffs contend

Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiffs' consumer reports, and consequently reported inaccurate information about Plaintiffs. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiffs from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiffs' eligibility for credit.

## II.   JURISDICTION AND VENUE

2.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiffs allege violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.     Venue in the Eastern District of Michigan is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## III.   PARTIES

4.     Plaintiffs incorporate herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5.     Plaintiffs are natural persons who reside in Detroit, Michigan.

6.      Plaintiffs are "consumers" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.      Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.      Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

9.      During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Michigan and conducted business in the State of Michigan on a routine and systematic basis.

10.     Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

11.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## IV.   FACTUAL BACKGROUND

13.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

14.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

17.     Defendants, two of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiffs and other consumers through the sale of consumer reports.

18.     Defendants obtain consumer information from various sources. Some consumer information is sent directly to Defendants by furnishers, and other information is independently gathered by Defendants from third party providers, vendors or repositories, like computerized reporting services like PACER.

19.     Defendants regularly obtain consumer bankruptcy information to include in consumer reports.

20.     The diligence Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in Defendants' subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

21.     Defendants' consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

22.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and dates of delinquencies contained in Defendants' reports.

23.     The information Defendants include in consumer reports contributes to a consumer's overall creditworthiness and determines his or her FICO Score(s).

24.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of his or her creditworthiness.

25.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

     a.  "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower the consumer's FICO Score will be.

     b.  The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that the consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact the consumer's credit score.

26.     Lenders also consider a consumer's debt-to-income ratio ("DTI") based on the total amount of debt reported by Defendants in their consumer reports.  DTI compares the total amount a consumer owes to the total amount a consumer earns.

27.     A consumer's income, however, is not included in his or her consumer report; only his or her amount of debt is.

28.     Lenders consider a consumer's DTI when deciding whether to approve financing and the credit terms thereof.

29.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for the consumer to obtain credit and favorable credit terms (e.g., higher interest, lower credit limits).

30.     A consumer who has obtained a bankruptcy discharge and has a consumer report that is inaccurately reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting as having a zero-dollar balance.

31.     Defendants are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding, are discharged; both such exceptions are rare and, furthermore, are identified on the individual consumer's bankruptcy docket sheet.

8

32.     Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendants independently obtain consumer bankruptcy case information.

33.     Defendants also receive information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

34.     However, Defendants regularly report inaccurate information about consumers after they receive a Discharge Order.

35.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendants frequently report information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

36.     Defendants regularly publish consumer information that conflicts with information provided by data furnishers to Defendants, already included in Defendants' credit files, contained in public records that Defendants regularly access, and/or sourced through Defendants' independent and voluntary efforts.

37.     Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiffs, who have been discharged from Chapter 7 Bankruptcy.

38.    Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiffs, without verifying or updating the information as required by § 1681e(b), despite possessing information inconsistent with the reported information that establishes the reported information is inaccurate.

39.    Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

40.    Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

41.    Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in Defendants' own files.

42.    Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate credit reporting following a Chapter 7 discharge.

43.    Thus, Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, which cause Defendants to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

//

//

10

*Allegations Specific to the Credit Reporting of Plaintiffs*

44.    On or about July 17, 2015, Plaintiffs leased an automobile from Auto Trakk, LLC thereby opening a joint account, starting with 5**** (the "Auto Account").

45.    However, Plaintiffs subsequently fell on hard times and voluntarily surrendered the vehicle in or around August 2018.

46.    Plaintiffs filed a "no asset" Chapter 7 Bankruptcy on or about September 30, 2022, in the United States Bankruptcy Court for the Eastern District of Michigan (Case No. 22-47636-mlo).

47.    Plaintiffs received an Order of Discharge on or about January 4, 2023.

48.    Thereafter, Plaintiffs were not personally liable for their dischargeable debts, including the Auto Account. All dischargeable debts carried zero-dollar balances after the bankruptcy discharge.

49.    Defendants prepared one or more consumer reports concerning Plaintiffs after Plaintiffs were discharged from Chapter 7 Bankruptcy.

50.    In Plaintiffs' consumer reports, Defendants included the bankruptcy case number, court, filing date and the fact that Plaintiffs' bankruptcy had been discharged in the Public Records section of Plaintiffs' consumer reports.

51.    Defendants also reported Plaintiffs' credit history in individual "tradelines," including names of credit accounts, account numbers, account types,

11

responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

52.     Defendants obtained notice of Plaintiffs' bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendants in Plaintiffs' consumer reports.

53.     Defendants are aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

54.     Defendants should have reported **all** of Plaintiffs' dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance but did not.

55.     The Auto Account was included in Plaintiffs' bankruptcy and discharged on or about January 4, 2023.  Therefore, the Auto Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

56.     However, Defendants each reported the Auto Account with an inaccurate status and with an outstanding balance owed.

57.     Specifically, Experian reported the Auto Account with a status of "Voluntarily Surrender" and as having an outstanding balance of $7,216.

12

58.     On Terry Morgan's Equifax credit report, dated March 21, 2023, Equifax reported the Auto Account with a "Current Payment Status" of "60-89 Days Late" and as having an outstanding balance of $7,216.

59.     On Darla Morgan's Equifax credit report, dated March 17, 2023, Equifax reported the Auto Account with a status of "NOT_MORE_THAN_THREE_PAYMENTS_PAST_DUE" and as having an outstanding balance of $7,216.

60.     Defendants did not indicate that the Auto Account was discharged in bankruptcy or report the Auto Account with a zero-dollar balance, despite reporting Plaintiffs' bankruptcy in the public records section of Plaintiffs' consumer report and reporting other pre-bankruptcy accounts as "Discharged/Included in Bankruptcy Chapter 7," and/or with zero-dollar balances.

61.     Notably, the other national consumer reporting agency Trans Union, did not inaccurately report the Auto Account like Defendants.

62.     Auto Trakk, LLC ("Auto Trakk") furnished information to Defendants that indicated Plaintiffs' debt was included or discharged in bankruptcy, and/or had a zero-dollar balance after the bankruptcy discharge, but Defendants rejected or otherwise overrode the data they received.

63.     Alternatively, Defendants knew from past experiences that Auto Trakk furnished inaccurate information regarding discharged debts or has historically

failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

64. Nevertheless, Defendants blindly relied on the information provided by Auto Trakk even though this information conflicted with or was contradicted by information contained in Defendants' records, as well as Defendants' knowledge regarding Plaintiffs' bankruptcy and discharge.

65. Defendants' reliance on the furnisher, Auto Trakk, was therefore unreasonable.

66. Defendants inaccurately reported that Plaintiffs owed a balance that they did not actually owe, and also reported inaccurate account statuses and/or payment histories.

67. Defendants inaccurately reported the Auto Account with a balance owed after the account was discharged in Chapter 7 Bankruptcy and therefore had a zero-dollar balance.

68. Defendants failed to indicate that the Auto Account had a zero-dollar balance and/or was included/discharged in Chapter 7 Bankruptcy.

69. Defendants' reporting of the Auto Account is patently false/incorrect and therefore inaccurate.

70. If not patently false/incorrect, Defendants' reporting of the Auto Account is materially misleading and therefore inaccurate.

71.     On Darla Morgan's March 17, 2023 Equifax credit report, Equifax reported a Credit One Bank Account, ending with \*\*\*\*\*\*\*\*\*\*\*\*4702 (the "Credit One Account") as having an "UNDESIGNATED" owner and with late payments.

72.     Darla Morgan is only an authorized user of the Credit One Account. As such, the Credit One Account should not have been reported on her credit report.

73.     Notably, the other national consumer reporting agencies, Experian and Trans Union, did not include the Credit One Account in Darla Morgan's consumer report(s).

74.     Defendants' reporting of the Credit One Account is patently false/incorrect and therefore inaccurate.

75.     If not patently false/incorrect, Defendants' reporting of the Credit One Account is materially misleading and therefore inaccurate.

### *Plaintiffs' Damages*

76.     After Plaintiffs' bankruptcy discharge, Plaintiffs each individually applied for a credit card with Credit One and were both denied due to the inaccurate reporting of the Auto Account by Defendants.

77.     Additionally, Plaintiffs each suffered further credit denials due to the inaccurate reporting of the Auto Account by Defendants.

15

78.     Defendants' inaccurate reporting of the Auto Account, along with additional information belonging to Plaintiffs, was published to multiple creditors by Defendants during the process of Plaintiffs' credit applications.

79.     As a direct result of Defendants' inaccurate reporting, Plaintiffs suffer damages, including decreased credit scores, lower overall creditworthiness, and other financial harm.

80.     Additionally, Plaintiffs suffered economic damages in the form of attorneys' fees incurred for a necessary review of their credit reports.

81.     Additionally, Plaintiffs suffer interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational damage, humiliation, stress, anger, frustration, shock, embarrassment, violation of Plaintiffs' right to privacy, and anxiety.

## V.     COUNT I
### Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)

82.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

83.     The FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

84.     Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of

Plaintiffs' credit information pertaining to pre-bankruptcy debts after they received a Discharge Order.

85. Defendants independently sought information about Plaintiffs' bankruptcy filing and discharge and voluntarily reported the same in Plaintiffs' consumer reports.

86. When Defendants procured and published Plaintiffs' bankruptcy information, they had an obligation to ensure they followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

87. Defendants knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding. Defendants knew or should have known of their obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

88. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of discharged debts.

89.     Additionally, Defendants possess or can easily obtain substantial written materials that detail their duties and obligations under the FCRA, including those that apply when consumers file for Chapter 7 Bankruptcy.

90.     Despite knowledge of these legal obligations, Defendants willfully and consciously breached their known duties and deprived Plaintiffs of their rights under the FCRA.

91.     In this case, Defendants inaccurately reported accounts that Defendants knew pre-dated Plaintiffs' Chapter 7 Bankruptcy and were included and discharged by Plaintiffs' bankruptcy discharge.

92.     Defendants had actual knowledge of Plaintiffs' bankruptcy and Discharge Order, as evidenced by the information they published in Plaintiffs' consumer reports, including Plaintiffs' bankruptcy case number, court, date of filing and date of discharge.

93.     Defendants are also on notice from other tradelines reported by Defendants that indicate Plaintiffs' accounts were included in and discharged in bankruptcy.

94.     Defendants received notice of Plaintiffs' bankruptcy discharge through public records, their own files, and information provided by data furnishers.

95.     Defendants know that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

96.     Yet in this case, Defendants reported the Auto Account, which pre-dated Plaintiffs' bankruptcy, with a balance owed (instead of a zero-dollar balance) after it was discharged.

97.     Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information they included in Plaintiffs' credit file/reports, and by also failing to report accurate information when Defendants knew or should have known the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants, reported to Defendants, and/or reasonably available to Defendants.

98.     Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

99.     Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

100.    Defendants' inaccurate reporting damaged Plaintiffs' creditworthiness.

101.    Plaintiffs suffer actual damages, including the aforementioned economic harm, decreased credit scores, loss of credit opportunities, credit denial, and other financial harm caused by Defendants inaccurately reporting a balance for

a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

102.  Plaintiffs also suffer interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

103.  Defendants are direct and proximate causes of Plaintiffs' damages.

104.  Defendants are substantial factors in Plaintiffs' damages.

105.  Therefore, Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, and costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

## VI.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment against Defendants for the following:

(a)   Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

(b)   An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)   An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)     An award of punitive damages, as allowed by the Court pursuant to 15

        U.S.C. § 1681n(a)(2);

(e)     An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C.

        § 1681n(a)(3) and § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and

        proper, including any applicable pre-judgment and post-judgment

        interest, and/or declaratory relief.

## VII.     <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury of all issues triable by jury.

RESPECTFULLY SUBMITTED this 25th day of July 2023.


**CHAMI LAW, PLLC**

By: /s/ *Tarek N. Chami*
Tarek N. Chami (P76407)
22000 Michigan Ave., STE 200
Dearborn, MI 48124
T: (313) 444-5029
tarek@chamilawpllc.com
*Attorneys for Plaintiffs*
*Darla and Terry Morgan*